900 P.2d 1387

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Jeremy Blaine HARRIS, Defendant–Appellant.**

No. 21560.

Court of Appeals of Idaho.

Aug. 17, 1995.

Kent D. Jensen, Rupert, for appellant.

Alan G. Lance, Attorney General; Charles E. Zalesky, Deputy Attorney General, Boise, for respondent.

LANSING, Judge.

This is an appeal from a judgment of conviction and sentence imposed for second degree murder, I.C. §§ 18–4001, –4003(g). Jeremy Blaine Harris was initially charged with murder in the first degree. In return for the prosecutor's agreement to reduce the charge to second degree murder and to recommend to the district court a unified sentence of twenty years with a minimum term of confinement of ten years, Harris pleaded guilty to the reduced charge. The district court imposed a lengthier sentence than that recommended by the State, sentencing Harris to the custody of the Board of Correction for twenty-five years, with a minimum term of incarceration of fifteen years. On appeal, Harris challenges the validity of his guilty plea and the reasonableness of his sentence. We affirm.

## I.

### BACKGROUND

The circumstances of the charge against Harris are as follows. On July 31, 1993, Jeremy Harris, who was then sixteen years old and was very intoxicated, entered the home of his friend, thirteen-year-old Brendy Thueson. Finding her asleep, Harris decided to steal alcohol and other belongings of the Thueson family. Harris began to carry away a loaded rifle which he found in a bedroom. While leaving the home, Harris was surprised by Brendy as she came out of her bedroom. Harris immediately turned and fired the rifle, killing Brendy.

Harris was initially charged with first degree murder and pleaded not guilty. He subsequently entered into a written plea agreement by which the prosecutor agreed to reduce the charge to murder in the second degree and to recommend that the court impose a unified sentence of twenty years, with a ten-year minimum term of confinement. At the change of plea hearing, the district court advised Harris of the rights he would be waiving if he pleaded guilty and examined Harris regarding his understanding of the consequences of a guilty plea. The court then explained that it would give weight to the attorneys' sentencing recommendations but would not be obligated to adopt them. The court stated:

> Now, I have made it very plain to your attorneys, and I want to make it very plain to you here today, that I will not be bound under Rule 11 of the Idaho Criminal Rules by this plea negotiation. I will make my own decision as to how you should be sentenced. I will give great weight and deference to the recommendations of the attorneys. I do that because they are the ones that for a year have been researching the facts, researching the law, seeing what witnesses would testify and how they would testify. They know their cases a lot better than I do. That's why I give great weight and deference to their recommendations. But I will not be bound by those recommendations.

At the subsequent sentencing hearing, after reviewing a presentence report and listening to testimony of witnesses and argument of counsel, the district court stated that it took "no consideration as concerns the plea negotiation" and imposed a unified twenty-five year sentence with a fifteen-year minimum term, a sentence which was longer than that recommended by the State.

On appeal, Harris first argues that he pleaded guilty in return for the prosecutor's recommendation of a particular sentence and that the district court, in effect, accepted the recommendation and then did not follow it. Harris asserts that the court's failure to give adequate consideration to the plea agreement after having told Harris that it would give

great deference to the attorneys' recommendations undermined the basis of the agreement and tainted the voluntariness of his guilty plea. Harris also contends that the court's refusal to follow the sentencing recommendations of the prosecutor was a "rejection" of the plea agreement, requiring the court to give Harris an opportunity to withdraw his guilty plea pursuant to Idaho Criminal Rule 11(d)(4). Finally, Harris argues that his sentence is excessive and an abuse of the court's discretion.

## II.

### ANALYSIS

### A. VOLUNTARINESS OF PLEA

We consider first Harris's contention that the judge's statement at the plea hearing that he would give weight and deference to the sentencing recommendations of the attorneys, coupled with the court's subsequent rejection of those recommendations, misled Harris and rendered his guilty plea involuntary.

To be valid, a guilty plea must be knowingly, intelligently and voluntarily made. *State v. Dopp,* 124 Idaho 481, 483–84, 861 P.2d 51, 53–54 (1993); *State v. Colyer,* 98 Idaho 32, 34, 557 P.2d 626, 628 (1976); *Svenson v. State,* 110 Idaho 161, 715 P.2d 374 (Ct.App.1986). A guilty plea entered in reliance upon a false premise may be set aside. *Mabry v. Johnson,* 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984); *Svenson,* 110 Idaho at 162, 715 P.2d at 375.

Harris did not challenge the voluntariness of his plea below but, rather, raises this question for the first time on appeal. Issues not presented to the trial court cannot be considered on appeal unless a question of fundamental error is involved. *State v. Mauro,* 121 Idaho 178, 824 P.2d 109 (1991); *State v. Denny,* 122 Idaho 563, 835 P.2d 1374 (Ct. App.1992).

Error is fundamental if it goes to the foundation or basis of a defendant's rights or goes to the foundation of the case or takes from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive. *State v. Knowlton,* 123 Idaho 916, 918, 854 P.2d 259, 261 (1993); *State v. Sarabia,* 125 Idaho 815, 818, 875 P.2d 227, 230 (1994). Under this definition, we conclude that conduct by a trial court inducing a defendant to plead guilty in reliance upon promises that are later dishonored by the court would be fundamental error. Actions that coerce or falsely induce a defendant to plead guilty go to the foundation of the defendant's rights, and when the misconduct is by the court itself rather than the prosecutor or a third party, it is error of which the trial court necessarily should be aware and which the trial court had the opportunity to prevent or correct. Therefore, although Harris did not challenge the validity of his guilty plea below, we will consider his claim that his plea was induced by a sentencing promise from the court that was later disclaimed.

After a complete review of the record, we conclude that Harris's assertion that the court falsely induced him to plead guilty is without support. First, Harris signed the written plea agreement *before* the hearing at which the court indicated an intent to give deference to the recommendations of counsel. The agreement stated, "The defendant ... understands that the Court is not bound nor obligated to follow the State's recommendation and that additional conditions or penalties may be imposed." It also correctly specified that the penalty for second degree murder ranges from a minimum of ten years to a maximum of life in prison. *See* I.C. § 18–4004. Thus, Harris's decision to change his plea to guilty was made before he heard the judge's statement and with disclosure that the court could depart from the sentencing recommendations of the parties. Both the timing and the content of the written agreement counter any implication that Harris's decision to plead guilty was predicated upon the judge's comment at the hearing.

Second, at the plea hearing, the court assiduously explained, and Harris repeatedly

acknowledged, that the court was not obligated to adopt the sentence recommended by the prosecutor. Although the court stated that it would "give great weight and deference to the recommendations of the attorneys," the court also engaged in the following colloquy with Harris:

> The Court: I can still sentence you to your natural life in the Idaho State Penitentiary if I feel that the facts and circumstances support that decision. Do you understand that?
>
> The Defendant: Yes, Your Honor.
>
> The Court: That in fact I could sentence you, for you to die in the Idaho State Penitentiary, without possibility of parole. Do you understand that?
>
> The Defendant: Yes.
>
> . . . .
>
> The Court: Have you discussed that with your attorney?
>
> The Defendant: Yes, Your Honor.
>
> The Court: Specifically, your attorney has come to you and said: "Jeremy, we are going to be asking for these things, but this Judge has a rule and he will sentence you to what he feels is appropriate"?
>
> The Defendant: Yes, sir.

Later, at the same hearing, after Harris was sworn, the court again asked if he understood that the sentencing recommendation made by the State was not binding on the court. Harris indicated that he understood the court was not bound. The court then offered Harris an opportunity to withdraw his guilty plea, which Harris declined. The fact that Harris understood the court retained authority to impose a greater sentence is also confirmed by Harris's statements at the subsequent sentencing hearing. During his allocution before being sentenced, Harris acknowledged that he might be sentenced to life in prison.

Finally, and most importantly, because this issue was not raised below, there is absolutely no evidence through testimony from Harris or from any other source that the judge's statement of intent to give deference to the attorneys' sentencing recommendations in any way influenced Harris's decision to plead guilty.

■ Thus, although Harris has alleged fundamental error that rendered his guilty plea involuntary, his claim is belied by the appellate record. Because the record discloses that Harris made his decision to plead guilty before hearing the judge's comment, because he was repeatedly informed that the court could elect a sentence lengthier than that recommended, and because Harris has presented no evidence that the court's statement influenced his plea decision or affected the voluntary, knowing or intelligent character of his guilty plea, Harris's challenge to the validity of his guilty plea fails.

## B. COMPLIANCE WITH I.C.R. 11

We turn next to Harris's contention that the district court's rejection of the sentence recommended by the State amounts to a rejection of the plea agreement and requires that Harris be given a post-sentencing opportunity to withdraw his guilty plea.

■ In order to ascertain whether this argument, presented for the first time on appeal, raises an issue of fundamental error, some explanation of the provisions of I.C.R. 11 is necessary. Rule 11 defines the procedural requirements for accepting guilty pleas. Plea agreement procedures are specified in I.C.R. 11(d). Rule 11(d)(1)(B) [1] provides that a defendant may plead guilty to a

---

1. Rule 11(d)(1) states:
   Plea agreement procedure. (1) In general. The prosecuting attorney and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement, which may include a waiver of the defendant's right to appeal the judgment and sentence of the court, that upon the entering of a plea of guilty to a charged offense or to a lesser or related offense, the prosecuting attorney will do any of the following:
   (A) move for dismissal of other charges; or

charged offense in exchange for the prosecutor's agreement to make a recommendation, or agreement not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court. When a Rule 11(d)(1)(B) agreement is presented, the court has no duty to inform the defendant whether it accepts or rejects the agreement and is in no way bound by the sentencing recommendation. I.C.R. 11(d)(2); *State v. Kingston,* 121 Idaho 879, 881, 828 P.2d 908, 910 (Ct.App.1992). If, on the other hand, the plea agreement falls under subsection 11(d)(1)(A), (C) or (D), the court must advise the defendant whether it accepts or rejects the agreement and if the agreement is rejected, the court must allow the defendant an opportunity to withdraw the plea. *Kingston,* 121 Idaho at 881, 828 P.2d at 910.

The express terms of Harris's written agreement as well as statements by the parties at the change of plea hearing make it clear that Harris's plea agreement was of the type described in I.C.R. 11(d)(1)(B), for it only called for a sentencing recommendation by the State that would not be binding upon the court.

■ On appeal, Harris contends that the district court violated Rule 11(d)(4) by failing to inform Harris that the court was rejecting the plea agreement and to afford him the opportunity to then withdraw his guilty plea when the court elected not to follow the State's sentencing recommendation. This claim of error is without merit, however, for when a plea agreement is of the type specified under I.C.R. 11(d)(1)(B), the court is not required to accept or reject the agreement or to offer the defendant an opportunity to withdraw his plea if the sentencing recommendation is not adopted. I.C.R. 11(d)(2); *Kingston,* 121 Idaho at 881, 828 P.2d at 910; *State*

*v. Fertig,* 126 Idaho 364, 883 P.2d 722, 724–25 (Ct.App.1994). Harris's complaint that the district court gave him no opportunity to withdraw his guilty plea therefore does not demonstrate any error, much less fundamental error, in the proceedings below.

### C. SENTENCE

Finally, we address Harris's appeal of his sentence. Harris argues that a fifteen-year minimum term is unreasonably harsh under the circumstances of this case, where the defendant was barely sixteen years old at the time of the offense and the homicide was an impulsive, unpremeditated act.

■ When we review a sentence, we must ascertain whether there has been an abuse of the trial court's discretion. *State v. Wolfe,* 99 Idaho 382, 384, 582 P.2d 728, 730 (1978). The goals of criminal punishment, against which the imposed sentence must be evaluated, are the protection of society, deterrence, rehabilitation and retribution. *State v. Broadhead,* 120 Idaho 141, 146, 814 P.2d 401, 406 (1991), *overruled on other grounds by State v. Brown,* 121 Idaho 385, 825 P.2d 482 (1992); *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App. 1982). The application of sentencing standards, either by the trial court or by an appellate court on review, cannot be reduced to a formulaic process. As we said in *Toohill:*

> Such determinations cannot be made with precision. In deference to the discretionary authority vested in Idaho's trial courts, we will not substitute our view for that of a sentencing judge where reasonable minds might differ. An appellant must show that, under any reasonable view of the facts, his sentence was excessive in light of the [sentencing] criteria.

103 Idaho at 568, 650 P.2d 707.

■ For purposes of appellate review, we consider the minimum term of the sentence

(B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

(C) agree that a specific sentence is the appropriate disposition of the case;

or

(D) agree to any other disposition of the case. The court may participate in any such discussions.

to be the probable duration of incarceration. *Broadhead*, 120 Idaho at 146, 814 P.2d at 406; *State v. Sanchez*, 115 Idaho 776, 777, 769 P.2d 1148, 1149 (Ct.App.1989). Our focus on appellate review is upon the nature of the offense and the character of the offender. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct.App.1982).

Harris's youth was one factor, along with all the other circumstances before the trial court, to be considered in arriving at an appropriate sentence. *See Broadhead*, 120 Idaho at 146, 814 P.2d at 406. The court took note of Harris's age and impulsiveness and the fact that there was no premeditation. The district court also considered as a mitigating circumstance, the fact that Harris had come from a dysfunctional family background and had received little parental nurturing or guidance.

■ Other factors that the sentencing court had to consider, however, included the gravity of the offense that Harris had committed. In the course of a burglary he shot and killed a thirteen-year-old girl who had been his friend, demonstrating that he is capable of killing when under the influence of drugs or alcohol and thereby presents a significant danger to society. The court also received evidence that Harris was introduced to alcohol when he was six or seven years old, and by the age of ten was using marijuana on a weekly basis. In his teenage years, Harris not only continued regular use of marijuana, but also began using LSD and regularly inhaled fumes from gasoline and spray paint. Before entering the Thueson home on the night of the murder, Harris had been consuming alcohol and may also have been under the influence of other intoxicants. Although Harris had not previously engaged in crimes of violence, he had a lengthy juvenile record that began when he was eight years old. A psychologist who evaluated Harris reported that Harris needed a structured environment and treatment for three to five years to provide stability, to engender values that were not provided in Harris's family background and to address his drug

dependency. The psychologist opined that if Harris were to continue abusing drugs and alcohol upon his release, there would be a very high probability of reoffense.

In fashioning the sentence, the district court took into account the goals of punishment, deterrence and the need to protect society, stating:

> He must be incarcerated because, if not, it would depreciate the crime in this case.... Imprisonment would furnish an appropriate punishment and deter this defendant. It seems as if he does change if he is incarcerated.... Imprisonment will provide a deterrent to others in the community.... [A] message must be sent to the individuals, to today's youth, that this type of conduct cannot be countenanced.... As such, this court feels that a prison sentence would help deter others in this community from this type of conduct. It may even deter kids who are headed down the same path as Jeremy to understand that it leads nowhere except to the prison door.

The court also considered Harris's potential for rehabilitation and for that reason declined to impose what the court considered to be a purely punitive sentence, immediate commitment to the custody of the State Board of Correction. Instead, the district court provided for Harris to be incarcerated at the Youth Services Center under the custody of the Department of Health and Welfare until his completion of the programs offered there, at which time Harris will be transferred to the custody of the Board of Correction.

■ Our task on review of a sentence is to decide whether a clear abuse of discretion has been affirmatively shown in that the sentence is unreasonable upon the facts of the case. *Broadhead*, 120 Idaho at 145, 814 P.2d. at 405. Here, the record does not demonstrate that the sentence is excessive under any reasonable view of the facts. Reasonable minds might differ as to whether a fifteen-year determinate term, or some lesser

term, best serves the goals of sentencing in this case. Our conclusion, therefore, is that the district court acted within its discretion.

For the reasons set forth above, the judgment of conviction and sentence are affirmed.

WALTERS, C.J., and PERRY, J., concur.